UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

*******************************************
JAMES K. BRENCHLEY,

                    Plaintiff,

        - v -

                                                    5:01-CV-0190

VILLAGE OF PHOENIX, FRANCIS E. "BUD"
KINNE, Mayor of Phoenix, VILLAGE OF PHOENIX
POLICE DEPARTMENT, and JAMES NORTON,
a member of the Village of Phoenix Police Department.

                    Defendants
*******************************************

**APPEARANCES:**                              **OF COUNSEL:**

OFFICE OF STEPHEN CIMINO              STEPHEN LANCE CIMINO, ESQ.
*Counsel for Plaintiff*
307 South Clinton Street, Suite 300
Syracuse, New York 13202-1250

RYAN & SMALLACOMBE, L.L.P.          CLAUDIA A. RYAN, ESQ.
*Counsel for Defendant*
102 Hackett Boulevard
Albany, New York 12209


**NORMAN A. MORDUE, District Judge**


**MEMORANDUM-DECISION AND ORDER**

**I.        INTRODUCTION**

        Plaintiff, James Brenchley, alleges that his First Amendment right of free speech was

violated under 42 U.S.C. § 1983, and the New York State Constitution when he was forcibly

removed from a town board meeting in the Village of Phoenix in February 1998 after speaking

out about the Village's failure to address handicapped accessibility issues under the  Americans

with Disabilities Act ("ADA"), codified at 42 U.S.C. Section 12101 *et seq.*.  Although the complaint does not set forth any causes of action based on the ADA, plaintiff requests in the "Wherefore" clause of his complaint that the Court issue a declaratory judgment declaring that the Village of Phoenix is or was not in compliance with the ADA. Defendants move for summary judgment dismissing plaintiff's claims on various grounds.

**II.**     **FACTUAL BACKGROUND**

The facts of this case as derived from the parties Local Rule 7.1 Statements are as follows:

Plaintiff, who does not suffer from any physical/mental handicaps or disabilities, is a former resident of and current property owner in the Village of Phoenix.  Plaintiff  has not been a resident of the Village since 1995 or 1996, and was not a resident of the Village on February 17, 1998.  Defendant Francis Kinne was the Mayor of the Village of Phoenix on February 17, 1998, and had been the Mayor of the Village since April 1997.  Defendant James Norton was the Chief of Police for the Village of Phoenix between 1994 and January 2000.  Meetings of the Village of Phoenix Board of Trustees are held twice a month in the Sweet Memorial Building located in the Village.  Typically, these meetings are held in the board room of the second floor of the Sweet Memorial Building.  However, prior to February 17, 1998, the defendant Village asserts that bi-monthly meetings were occasionally held in the ground floor former court room of the Sweet Memorial Building if and when a disabled person requested to attend the meeting. Plaintiff attended meetings of the Village Board of Trustees "sometimes regularly" prior to February 17, 1998, beginning in the mid 1970s.  According to official minutes of Village of Phoenix Board meetings, between April 4, 1995 and February 17, 1998, plaintiff attended 29

Village of Phoenix Board of Trustees meetings.

Mayor Kinne was familiar with the ADA on February 17, 1998, because it had been brought to the Village's attention that "possibly we [Village officials] were in disarray with the rules." "[H]istorical preservation people" had advised the Mayor that there were exceptions to the rule and on February 17, 1998, he was not sure whether the Sweet Memorial Building was in compliance with the ADA. Prior to that date, the Mayor had conversations with ADA compliance officials in Albany, but no modifications had yet been made to the Sweet Memorial Building because "we didn't even know the rules yet . . . we didn't know what to do". The issue of ADA compliance had been a subject of Village meetings prior to February 17, 1998, and there had been talk about changes and modifications to the building to comply with the ADA. Indeed, Village board meeting minutes for the two years prior to February 17, 1998, indicate that the issue of handicapped accessibility to the Sweet Memorial Building had been raised numerous times at these meetings, often by plaintiff.. Prior to February 17, 1998, plaintiff was never denied the opportunity by the Village to make a public comment about any issue, or the ADA issue in particular.

Plaintiff attended the Village of Phoenix Board of Trustees meeting on February 17, 1998. During the "Public Comment" portion of the meeting, plaintiff raised his hand to speak and the Mayor told him to "go ahead." The Mayor did not deny plaintiff an opportunity to speak nor did anyone from the Village deny him an opportunity to speak on February 17, 1998. Plaintiff asked the mayor why the Village had not made the Sweet Memorial Building accessible to the handicapped and asked if the Mayor and Board were familiar with the ADA. The Mayor advised him that he knew about the ADA and that "they were working on it."

3

Plaintiff then inquired of the Mayor what they were working on, because he did not think that

the Village had a plan.  Plaintiff testified during his deposition that he kept speaking because

"[he] was trying to find out . . . when they were going to comply with the law" and that he

thought that the Mayor did not want to respond because "they hadn't done anything."  Plaintiff

also acknowledged that he raised his voice because the Mayor "wouldn't let [him] speak."

According to the Mayor, plaintiff kept saying the same thing over and over even though the

Mayor advised plaintiff that the meeting must continue and asked if he had anything other than

the ADA issue to discuss.  According to the Mayor, plaintiff continued to repeat himself at least

three times, and, in response to the Mayor's statement that he would have him removed if he did

not move on to a new subject area, plaintiff said "I'd like to see you do it."  Plaintiff denies that

he "kept saying the same thing over and over," but conceded that he "could have" asked what

the Town's plans were or when they were going to comply with the ADA "more than once or

twice."

　　　Plaintiff testified that he was taken by the arm and collar by defendant Norton and

removed from the room.  Defendants Kinne and Norton insist Norton took plaintiff by the

elbow and walked him to the door "like you would escort a lady to a dinner dance."  Plaintiff

said that while he was being escorted out, he requested to stay at the meeting and promised to

"be quiet."[1]  However, plaintiff did not recall the sequence of events or when he made this

---

[1]

Plaintiff's complaint and the motion papers prepared by his attorney assert that he asked the
Mayor if he could stay at the meeting if he remained silent and the Mayor said "No."
However, plaintiff did not so testify in this case or submit a sworn affidavit to this effect.  The
only evidence in admissible form in the record on this issue is the affirmative response
plaintiff gave to a question posed by defense counsel regarding whether he had ever said "I'll
sit down and be quiet, just let me stay?" to which plaintiff responded "Yes, I did."  There is

alleged statement.  After defendant Norton and plaintiff were outside of the meeting room,

plaintiff asked Norton "Why are you doing this?" and Norton answered that he was directed to

do so by "[his] boss," the Mayor.  According to plaintiff, Norton then said "if you don't like it,

sue us."  Defendant Norton denied making this statement, but said he did advise plaintiff "he

had a right to legal recourse if he so desired."

In early 2001, a complaint was filed with the United States Department of Justice by an

unnamed individual against the Village of Phoenix alleging violations of failure to implement

requirement of the ADA in connection with the Sweet Memorial Building in the Village.  The

federal investigator assigned to the complaint wrote to the Village and requested the alleged

violations be remedied.  The Village then took the remedial measures requested by the

Department of Justice and advised the Department as of February 27, 2002, all required

modifications had been made.  The Village's attorney, J.C. Englebrecht, submitted an affidavit

herein stating that since February 2002, the Department of Justice has closed its investigation of

the Village and deemed the Village's ADA policy initiatives compliant with the requirements of

the Act.

## III.   <u>DISCUSSION</u>

A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

Substantive law determines which facts are material; that is, which facts might affect the

---

no indication in the deposition transcript of to whom plaintiff directed this request and no
indication of a response to it.  Indeed, plaintiff admitted he could not recall the sequence of
events at the meeting or when he made any particular comment.

outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even

when they are in dispute. *See id.* The moving party bears the initial burden of establishing that

there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S.

317, 323 (1986). With respect to any issue on which the moving party does not bear the burden

of proof, it may meet its burden on summary judgment by showing that there is an absence of

evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this

initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue

for trial. *See* Fed. R. Civ. P. 56(e). It is with these considerations in mind that the Court

addresses defendants' motion for summary judgment.

B.      Substantive Legal Standard

        Plaintiff bases his federal claims on 42 U.S.C. § 1983, which reads in part:

> Every person who, under color of any statute, ordinance, regulation,
> custom or usage of any State ..., subjects or causes to be subjected,
> any citizen of the United States ... to the deprivation of any rights,
> privileges or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action.

Plaintiff asserts that defendants violated his federal constitutional right to free expression when

they removed him from the town board meeting. Plaintiff also asserts that defendants' actions

violated his right of free expression as guaranteed by the New York State Constitution.

C.      Plaintiff's § 1983 Claim for Denial of Right to Free Expression

        Because the Village held open meetings, inviting public discourse on the matters at

hand, this Court views those meetings as a "limited public forum" for First Amendment

analysis. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45-46 (1983);

6

*City of Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 175 (1976).  Reasonable time, place and manner restrictions on speech in limited public fora comport with the Constitution so long as they are content-neutral, serve a significant government interest and leave open alternative channels for expression. *See United States Postal Serv. v. Council of Greenburgh Civil Ass'ns,* 453 U.S. 114, 132 (1981).

The record indicates that plaintiff spoke out a number of times previous to February 17, 1998, against the Village's failure to comply with the ADA in connection with making the Sweet Memorial Office Building accessible to the handicapped.  On the evening in question, it was only after plaintiff raised his voice and continued to insist that the Mayor answer questions on this issue - even after the Mayor said "they were working on it" and asked plaintiff to move on to other business - that the Mayor asked plaintiff to stop speaking or subject himself to removal.  When plaintiff continued speaking in spite of this warning, the Mayor asked defendant Norton to remove him.

The Court cannot determine when and to whom plaintiff allegedly said he would "be quiet" if he was allowed to stay, though the Court must assume for the purpose of deciding this motion that the statement was made.  Nevertheless, outside of this self-serving and conclusory allegation by plaintiff, there is absolutely no evidence in the record that the Mayor asked defendant Norton to remove plaintiff from the meeting because of the content of his speech.  To the contrary, the record reveals that the Mayor and the village board allowed a broad range of views, including views adverse to their own, to be expressed at all the meetings, including meetings where the issue of ADA compliance was raised by plaintiff and other citizens.  Based thereupon, the Court finds that no reasonable trier of fact could conclude anything other than

that the Mayor's action in this case was taken in response to plaintiff's disruptive behavior as opposed to the content or viewpoint of his speech.  It is settled law that "the Village had a significant interest in conducting its meeting in an orderly and effective fashion" and any threat of removal "was a reasonable response to [plaintiff's] failure to follow the Mayor's directive and cease interrupting the public meeting." *Devine v. Vill. of Port Jefferson,* 849 F. Supp. 185, 190 (E.D.N.Y. 1994).  "Once the Mayor instructed [plaintiff] to stop disrupting the meeting and [plaintiff] refused to comply, the Mayor was left with little alternative than to threaten [removal] if he wished the meeting to proceed." *Id.*  Because there is no evidence suggesting, much less demonstrating, that the Mayor's reaction to plaintiff's refusal to stop speaking was content-based, plaintiff's claims based on alleged denial of his right to free speech must be dismissed.

C.      Plaintiff's "Declaratory Judgment" Claim for Relief

It is apparent from a cursory review of the complaint that plaintiff did not plead a cause of action for violation of the ADA by defendants.  Plaintiff concedes he did not actually plead this claim, but requests that the Court "invoke its broad equitable power, and grant the relief for declaratory judgment" that the Village is or was in violation of the ADA.  Because plaintiff acknowledges that he did not properly raise such a claim in his pleading, the Court need not address it.  Even assuming the Court had the power claimed by plaintiff to grant relief not requested in a pleading, the Court declines to do so in this case on several grounds, not the least of which is that the request for a declaratory judgment is moot.  It is undisputed that any apparent violation of the ADA by the Village has been definitively remedied to the satisfaction of the Department of Justice.  Consequently, plaintiff's request for declaratory relief, to the

extent he is deemed to have raised one, must be dismissed.

**IV.**      **CONCLUSION**

Based upon the foregoing, defendants' motion for summary judgment dismissing plaintiff's complaint is hereby GRANTED.

IT IS SO ORDERED.

Dated: September 30, 2005
         Syracuse, New York

Norman A. Mordue
U.S. District Judge

9